Perel and Lowenstein, Inc. v. Commissioner.
Perel & Lowenstein, Inc. v. Commissioner
Docket Nos. 48602, 52569.
United States Tax Court
T.C. Memo 1955-115; 1955 Tax Ct. Memo LEXIS 223; 14 T.C.M. (CCH) 412; T.C.M. (RIA) 55115; May 6, 1955
*223 Sec. 23(a)(1)(A), 1939 Code - Compensation for services: Upon the facts, reasonable allowance for compensation for present and past services determined. E. Charles Eichenbaum, Esq., Boyle Building, Little Rock, Ark., and W. S. Miller, Jr., Esq., for the petitioner. Lester R. Uretz, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined deficiencies in income tax for the fiscal years ended January 31, 1949, 1950, 1951, and 1952, as follows: Docket No.
Year
Deficiency
48602
1949
$11,400.00
48602
1950
11,400.00
48602
1951
9,691.78
52569
1952
12,286.03
The only question to be decided is the amount, if any, which is deductible for the fiscal years ended January 31, 1950, 1951, and 1952, as a reasonable allowance for compensation for services rendered by petitioner's president under section 23(a)(1)(A) of the 1939 Code. The respondent now confesses error with respect to his determination of a deficiency for the fiscal year ended January 31, 1949. For that taxable year, there is no deficiency. Petitioner's returns were filed with the collector for the district of Tennessee. *224 Findings of Fact Petitioner is engaged in the wholesale and retail jewelry business in Memphis, Tennessee. It was incorporated in Tennessee in 1946 to acquire and continue operation of the wholesale and retail jewelry business of Perel and Lowenstein Company, a copartnership which began business in 1915. Petitioner, in the taxable years, operated six retail jewelry stores. In addition to selling jewelry, petitioner sold silverware, diamonds, watches, appliances, luggage, and photographic equipment. Joseph Perel was the petitioner's president from its incorporation until his death on February 3, 1953. He was about 65 years of age when he died. For over 40 years prior to his death, Joseph Perel was engaged in the jewelry business. Except for an illness of about three weeks in December 1948, Perel devoted all of his time to petitioner's business from the time of its incorporation until the early part of 1949. Perel's services to petitioner before February 1, 1949, during the period he rendered services on a full-time basis, included the following: He was the chief executive, buyer, and director. He was the manager and supervised daily operations. He exercised the final judgment *225 in the making of all policy decisions. He made all financial and credit arrangements with banks and suppliers. He secured large loans from a Memphis bank, which he personally guaranteed, to secure working capital for petitioner. He bought diamonds, watches, and gold jewelry, and planned the merchandising and sales promotions of such items. Sales of diamonds, watches, and jewelry constituted a major part of the total volume of petitioner's business. Perel had the reputation of being one of the ten best retail merchandisers of diamonds, jewelry, and watches in the United States. During his active years, Perel contributed in a large and substantial way to the growth and success of petitioner's business. Perel's salary, as authorized by its board of directors, was $30,000 per year from the first year after petitioner's incorporation until the close of the fiscal year ended January 31, 1951. Because of decreases in the extent of Perel's services, due to illness, petitioner's directors reduced his salary to $24,000 for the year ended January 31, 1952. They reduced his salary to $18,000 for the year ended January 31, 1953, for the same reason. During each of the taxable years ended on *226 January 31, 1950 and 1951, petitioner paid Perel $30,000 as compensation for his services; and during the taxable year ended on January 31, 1952, petitioner paid Perel $24,000 as compensation for his services. During the fiscal years ended on January 31, 1950, 1951, and 1952, the average balances of petitioner's indebtedness to a Memphis Bank amounted to $450,000, $375,000, and $350,000, respectively. During those fiscal years, Perel pledged to the bank as security for the indebtedness of petitioner his own securities having a market value in each year of about $500,000. Petitioner's gross sales during its fiscal years ended on January 31, 1949, 1950, 1951, and 1952 amount to $2,086,022, $1,895,012, $2,241,445, and $2,150,959, respectively. Perel suffered a heart attack on December 4, 1948. He was then 60 years of age. At the end of three weeks he had recovered, he thought, and he returned to work on a full-time basis. On January 11, 1949, Perel suffered a cerebral hemorrhage, or stroke, of which he was critically ill until the end of the summer of 1949. At the end of October 1949, Perel recovered to the extent that he was close to being as well as he could be under the circumstances. *227 His condition improved during 1950, 1951, and 1952, but he never fully recovered his health. The stroke, in 1949, caused severe paralysis of the limbs and loss of the power of speech. In 1949, Perel was unable to walk and used a wheel chair. In 1950, 1951, 1952, until his death in 1953, he was able to walk, to some extent, with the aid of braces and a cane, and he could use his left hand to make his signature, with difficulty. He never regained the ability to speak beyond saying a few words. His mental faculties were not impaired but he tired easily and could not give concentrated attention to matters for more than about an hour. During 1950, Perel's physician advised Perel's sons that there was a possibility that he might regain the ability to speak, and that the paralysis of his limbs might be lessened. During 1951, hopes of such improvements were almost abandoned, and it became evident that Perel could not resume his normal business activities. During the fiscal year ended January 31, 1950, Perel was totally incapacitated during 9 months. During the last three months of that fiscal year, he went to his office in petitioner's offices about 6 times; he remained for about 2 hours *228 on each visit. During the fiscal years ended January 31, 1951 and 1952, Perel went to his office during good weather from 4 to 15 times a month, each visit being for about 2 hours. When he went to petitioner's place of business, to his office, and when he received visits at home from officers and employees of petitioner, and from representatives of suppliers and vendors, Perel could give attention to conversation, and he was advised and consulted about the buying of watches and diamonds, financial reports, and some policy matters. Although he could not speak, he was able to indicate by means of gestures his approval or disapproval of proposals relating to the buying of merchandise for resale, and some of the aspects of the operation of petitioner's business. In this way, Perel rendered some services of value to petitioner during the taxable years ended on January 31, 1950, 1951, and 1952, but compared to the services which he rendered prior to suffering a stroke on January 11, 1949, such services in the years in question were very greatly and substantially reduced. Perel's services to petitioner during each year from the time of its organization in 1946 until the close of the fiscal *229 year ended on January 31, 1949, were worth more to petitioner than $30,000, the salary paid to Perel during that period. Perel's services to petitioner during the years ended January 31, 1950 and 1951, were worth less than $30,000, for each year, to petitioner; and his services during the year ended January 31, 1952 were worth less than $24,000. The compensation paid to Perel by petitioner during each of the years ended on January 31, 1950, 1951, and 1952, represented, in part, according to the intent of petitioner's directors, compensation for services rendered in prior years for which Perel's compensation was less than the value, in each earlier year, of the services which he actually rendered. A reasonable allowance for compensation for the personal services actually rendered by Perel, as well as for compensation for past services actually rendered, was not more than $10,000 for the fiscal years ended January 31, 1950, 1951, and 1952. Opinion The only question presented is whether the amounts paid by petitioner to its president in the fiscal years ended in 1950, 1951, and 1952, constitute reasonable compensation for personal services actually rendered to the corporation *230 either in those years or in prior years. Deductions are claimed under section 23(a) (1) (A) of the 1939 Code. The question presented is one of fact and the burden of proof is upon the petitioner. , and cases therein cited. Respondent has disallowed in full deduction of the salary payments. He claims that Joseph Perel was physically unable to perform personal services of any substantial value to the corporation in the years involved, and that he was adequately compensated in prior years for his past services. It is not questioned by respondent that the amounts paid to Joseph Perel, who was a stockholder of the corporation, were intended as anything other than salary. Petitioner concedes that during most of the fiscal year ended in 1950, Joseph Perel was critically ill and was unable to render any personal services to the corporation; and that during the fiscal years ended in 1951 and 1952, his health permitted only a very limited actual association with the business. However, it is urged by petitioner that Perel's salary was continued during this period for several reasons: (1) It was hoped that in a reasonable *231 time he would recover his health sufficiently to resume his normal duties with the corporation, at least on a reduced scale. (2) He did render some valuable services to the corporation after the condition of his health began to improve in the latter part of 1949. (3) His continued association with the corporation as its president was a valuable asset to the corporation because of his long experience and business contacts, and the high regard in which he was held in the trade. (4) He had rendered valuable services to the corporation in past years for which he was not adequately compensated. The evidence establishes that Perel's actual services to the petitioner during the fiscal years ended in 1950, 1951, and 1952 were so greatly curtailed and reduced as to be of a value substantially less than the salary he was paid. Deduction for compensation for services under section 23(a)(1)(A) is not allowable where no services of value are rendered to the taxpayer even though illness is the cause of the inability of the employee to render valuable services. , affd. ; . *232 Deductions are a matter of legislative grace and can be allowed only if permitted by provisions of the Internal Revenue Code. However, where the employer intends to make payments of compensation to an employee for services which he rendered in the past, for which he was not adequately or fully compensated, deduction under section 23(a)(1)(A) for compensation paid for services actually rendered may be allowed, it being understood that there was no prior agreement or authorization to make additional payments for past services. ; ; , reversed on another issue, ; . There is testimony, to which we give substantial weight, that Perel's services in each year prior to 1950 were worth more than $30,000 a year; that Perel had been the most dynamic employee of petitioner and had been instrumental in building its business to a high level of volume and profit; and that executives in similar businesses were paid more than $30,000 per year for similar services. *233 The evidence on this point, plus evidence that petitioner's directors intended that part of Perel's salary in the years when he was so greatly incapacitated was payment for past services, convinces us that petitioner is entitled to deduct in each of the taxable years under section 23(a)(1)(A), $10,000, and no more, as compensation for services actually rendered by Perel in the taxable years, and as additional compensation for services rendered in prior years. Such amount is, under all of the circumstances and facts, a reasonable allowance for compensation. It is not necessary to make any allocation of $10,000 between compensation for services actually rendered in each of the taxable years, and additional compensation for past services. . Decisions will be entered under Rule 50.